IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH PENA,

    **Plaintiff,**

v.                Civ. No. 05-168 JH/ACT

CIBOLA GENERAL HOSPITAL,

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on *Defendant's Motion for Summary Judgment* [Doc. No. 15]. Plaintiff asserts a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964. Defendant moves for summary judgment on the grounds that Plaintiff has failed to come forward with sufficient evidence to demonstrate that he has engaged in protected activity under Title VII. The Court has considered the arguments, authorities, and evidence provided by the parties. For the foregoing reasons, the motion for summary judgment will be granted and summary judgment entered in favor of the Defendant.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether judgment as a matter of law is appropriate, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999).

**FACTS**

The facts of this case, viewed in the light most favorable to the Plaintiff, are as follows.

Plaintiff Joseph Pena ("Pena") is a former employee of Defendant Cibola General Hospital ("Cibola"), where he worked as a radiologic tech beginning in 1995. On May 20, 2004, Pena sent a letter to Cibola's hospital administrator, Vince Ashley, as well as the personnel director, Sheila Cox. In that letter, Pena complained about his supervisor, Ben Saathoff ("Saathoff"). Pena stated that Saathoff was an inadequate manager and technologist who failed to order sufficient supplies for the diagnostic imaging department and failed to properly maintain the diagnostic equipment. Pena also asserted that Saathoff improperly denied him authorization to attend continuing education seminars. Pena alleged that "Saathoff is denying my request partly because he feels I owe him or that I need to validate my attendance two years ago at a registry review course in Houston." Pena complains that Saathoff gave authorization to a less senior Cibola employee, Coral Curry, to attend several continuing education seminars. Pena stated, "I feel this is due to the fact that they socialize after hours together." In the letter Pena also points out that Saathoff failed to authorize seminar attendance for another female employee, Nikki Thompson. Pena then goes on to state: "Mr. Saathoff is being very *discriminatory* in how he conducts business. I feel as though he favors the staff who just accept things as they are; the long term, senior employees in the department who truly know their job and know how the department should run get the brunt of his school yard bully tactics." (emphasis in original). Cibola terminated Pena's employment on July 18, 2004, approximately two months after he sent the letter. In his Complaint, Pena alleges that Cibola terminated him in retaliation for the May 20, 2004 letter.

In his deposition in this matter, counsel for Cibola asked Pena to explain his statement that

2

he felt Saathoff acted in a discriminatory manner.  Again, he stated that Saathoff denied his requests to attend seminars because he felt Pena "owed him something," yet Saathoff permitted Coral Curry to attend "because they were trying to improve her skills because she was a pathetic CT technologist," and because "[Saathoff] socialized with [Coral] on a regular basis."  He testified that Saathoff was discriminatory and hostile to Nikki Thompson because "he was intimidated by her knowledge" and discriminatory toward co-worker Chris Gutierrez because he was intimidated by Gutierrez' experience and popularity.  Finally, Pena said that Saathoff treated more favorably those employees with whom he socialized and played poker.

Then, on October 18, 2005, Pena signed his Unsworn Declaration, which he attached to his response to Cibola's motion for summary judgment.  The Unsworn Declaration does not state that it is made under penalty of perjury as required by 28 U.S.C. § 1746.[1]  In that declaration, Pena contends that he "did feel that Mr. Saathoff was favoring this female employee [Coral Curry] and treating me differently," Unsworn Declaration at ¶ 3, though Pena does not state that he believed the difference in treatment was due to sex.  In fact, Pena states that he is "not sure what Mr. Saathoff's reasons were for his actions. ... [I] did not know what his reasons were other than the fact that he socialized on a regular basis with the female employee.  He may have been intending to discriminate against me because I am a male."  Unsworn Declaration at ¶ ¶ 4-5.

## DISCUSSION

In order to succeed on a Title VII retaliation claim against an employer, a plaintiff must show

---

[1] Pena has moved to file a new declaration that corrects this defect, but is otherwise identical in content to his original declaration.  However, for the reasons set forth below, that motion is moot because even if the Court permitted him to substitute his amended declaration, it still would be insufficient to create a genuine issue of material fact.

3

Case 6:05-cv-00168-JCH-ACT   Document 32   Filed 04/19/06   Page 4 of 6

that "(1) the plaintiff engaged in protected opposition to discrimination; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (internal brackets and quotation marks omitted).  Protected opposition can range from filing formal charges to voicing informal complaints to superiors.  *See Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999).  A plaintiff need not convince the jury that his employer had actually discriminated against him; he need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory.  *See Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003).

Cibola argues that Pena cannot support his claim for retaliation because he cannot show that he engaged in protected activity that resulted in his discharge.  Specifically, Cibola argues that there is no evidence that Pena's May 20, 2004 letter expressed a reasonable belief that Cibola had engaged in discrimination on any grounds prohibited by Title VII—such as race, sex, color, national origin, or religion—and therefore does not constitute protected activity.  The Court agrees.

The basis for Pena's retaliation claim is Cibola's alleged reaction to his May 20, 2004 letter. In that letter, Pena characterized the nature of his grievance as "discrimination."  The letter asserts that Saathoff favored those employees with whom he had a social relationship and does not hint at a belief that sex discrimination was behind Saathoff's actions.  If he had included in the letter an allegation of disparate treatment based on his sex (or any other protected category), this could amount to protected activity even if the allegation ultimately proved to be meritless.  *See Petersen*, 301 F.3d at 1188 (noting that good-faith allegation of discrimination will support ensuing retaliation

4

claim regardless of whether discrimination actually occurred).  However, a vague reference to "discrimination" without any indication that this misconduct was motivated by gender or any other category protected by Title VII does not constitute protected activity and will not support a retaliation claim.  *See id.*  In other words, even if Cibola did retaliate against him for sending the complaint letter, the letter was not protected activity under Title VII; consequently, Cibola's alleged retaliation was not unlawful under Title VII.

Pena's own deposition testimony enforces this conclusion.  He testified as to his belief that Saathoff treated him and certain other employees badly because he was intimidated by their knowledge and experience, and that Saathoff favored other employees because of the social relationship he shared with them.  Despite thorough questioning on the issue, Pena offered no evidence of a good faith belief that Saathoff's actions stemmed from illegal discrimination on the basis of sex, race, color, religion, or national origin.  Instead, Pena belatedly attempts to create an issue of fact with his Unsworn Declaration, which he did not sign until *after* he received Cibola's motion for summary judgment.  However, for several reasons his Unsworn Declaration fails as a matter of law to create a fact issue.

First, the Unsworn Declaration is not competent evidence because it does not state that it is made under penalty of perjury as required by 28 U.S.C. § 1746.  Second, the Unsworn Declaration does not state facts based upon which the Court could conclude that Pena had a good faith belief that he was being discriminated against on the basis of his sex.  Instead, Pena states that he does not know the reason for Saathoff's actions, but that Saathoff "may have been intending to discriminate against me because I am a male."  This belated, bare speculation is insufficient to generate an issue of fact for trial. Third, it is well established that a plaintiff may not create a fact issue by creating a self-

5

serving affidavit in order to distance himself from an earlier discovery response. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (disregarding an affidavit that is contrary to the affiant's earlier sworn statements and designed to create a sham issue of fact); *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003) (extending *Franks* to deposition corrections that contradict the original testimony). It appears that is what Pena has attempted to do here.

Based upon the foregoing, the Court concludes that there is no genuine issue of material fact for trial, and therefore Cibola's motion should be granted and judgment should be entered in favor of Cibola.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. No. 15] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**